May it please the Court, my name is Ashley Gray and I represent the Apollos Richard and Cyndia Metcalfe. May I reserve two minutes for rebuttal? I will be arguing that the District Court erred in dismissing the case for lack of personal jurisdiction, that the District Court erred by not considering the proceedings filed after the February 6th Status Conference, and lastly, the discovery on the issue of personal jurisdiction should have been allowed. Would the Court like a brief rebuttal at this time? The District Court erred in dismissing this case for lack of personal jurisdiction because the requirements of the Virgin Islands Long Island Statute, i.e. Virgin Islands Code, Title 5, Section 49-03-001, as well as the Constitutional Requirements Act. Subsection A-1 of the Virgin Islands Long Island Statute states that transaction in business in this territory is sufficient to meet the requirements of Subsection A-1. In this Subsection A-1, a single act which, in fact, amounts to the transaction of business will satisfy the requirements of Subsection A-1. Additionally, the District Court of the Virgin Islands also held in brevity that a contract with a Virgin Islands resident and the object of the contract was to be performed, that even only in part in the Virgin Islands, that is sufficient to meet the requirements of Subsection A. Here, the net has the positive that at all times, when a contract is used, the vessel of issue was to be shipped to the Virgin Islands. Therefore, the contract was to be performed, in part, in the Virgin Islands. I agree with you, but I say this on the surface, that the District Court should have to check the facts. Perhaps your client would like that, but even assuming that the shipowner knew that it was going to be used by the Virgin Islands, haven't we, in his court, told in Sunbelt v. Noble, Texas, that just contracting with somebody in the forum, contracting with somebody in the forum, would not be considered a breach of jurisdiction, and that a resident in the forum is not anonymous enough to do what he has to do, and more here. What they did was dispatch him from Florida, I guess you might say, with knowledge that he was going to fly out to the Virgin Islands. Anything more than contracting with a resident in the forum? Yes, Your Honor. Your Honor is correct with the holding of this court. This court also held, in Miller v. Yacht, that when the issue of the contract is used, the totality of the subsection must be made. Yes, the vessel was manufactured in Florida, as Your Honor states. The vessel then took to the Virgin Islands. At all times, the Renaissance knew the vessel was taking to the Virgin Islands. They did that. They sent a letter to the Metcalfe, a statement of origin states that the vessel was coming to the Virgin Islands, and this would be its final destination. Additionally, the Renaissance has had other contacts with Virgin Islanders. The Renaissance has sold at least four vessels to the DMV, to a powerful rental business located here on St. Thomas, and seven other vessels to Virgin Islands residents. Additionally, the affidavit of Will Bradley, the Renaissance's president, states, although the Metcalfe states that they didn't sign a whole warranty, that most of its purchases do. Therefore, this whole warranty is creating a ten-year, ongoing relationship with Virgin Island residents, Your Honor. Additionally, also, any factual expungement... Isn't your strong argument that the case is... That's what I was moving to, Your Honor. Yes, our strong argument is subsection A2, Your Honor. A2 states that contracting to supply services or things in this territory. This requirement of subsection A2 are met if the contract is performed in the Virgin Islands, and the contract arrives out of the contract. Here, the contract was performed in the Virgin Islands because Renaissance was aware that the ultimate destination of the vessel was the Virgin Islands. It was performed in part in the Virgin Islands. What did the vessel builder perform? The vessel builder technically performed nothing in the Virgin Islands. However, it has been held that when the contractor knows the ultimate destination of the goods is the Virgin Islands, then the contract is being performed in part in the Virgin Islands. Your Honor, for instance, in this forum, the District Court of Virgin Islands has previously touted in part to East Craft Aircraft and Associates and Portland's Craft Corporation, that when these appellants knew, or excuse me, when these defendants knew the ultimate destination of the goods was the Virgin Islands, then the requirement of subsection A2 has been met, Your Honor. Again, Renaissance knew at all times that the vessel was coming to the Virgin Islands. They had litigated to defer for the Metcalfe. The Statement of Origin says that it was coming to the Virgin Islands. At all times, when they were negotiating with the Metcalfe for the sale, the Metcalfe were in the Virgin Islands, Your Honor. Additionally, the Metcalfe presented actual evidence to support this assertion. Renaissance knew the vessel was coming to the Virgin Islands. The Metcalfe presented a sale of employees. The Supreme Court opinion is that he should run reports again. The language on it shows that the Metcalfe also submitted the manufacturer's Statement of Origin, which had the Virgin Islands listed as the destination. Assuming you're right, they knew that the ultimate destination of the goods was the Virgin Islands, they would not exercise the privilege of a 60-day notice on the fact of being inconsistent with the Constitution, even if it was inconsistent with the Virgin Islands Clause, due process clause. No, Your Honor. The Metcalfe posit that they have, that the due process clause of the Constitution has been, the requirements of the due process clause have been satisfied, Your Honor. There, the Metcalfe asserts not only their general jurisdiction, but also specific jurisdiction. Your Honor, the Metcalfe asserts that there has been a contest, a continuous and systematic contest, with the Virgin Islands to satisfy general jurisdiction as well, because, again, it sold four vessels to a business location in the Virgin Islands. It sold seven other vessels to other Virgin Islands residents. If he's done with these vessels, the whole... I'm having a little bit of trouble here, because it seems like you're moving back and forth between those two, but I don't want to speak specifically to that. I think his question is maybe along that Sunbelt line, which is the Sunbelt decision says, or implies that we recontract the Virgin Islands vessel in addition to the United States, to create specific jurisdiction, and then what's asked about that is, well, we sell other boats, et cetera, which seems to be taking away from the specific jurisdiction. So the question I've got, even besides knowing that the paper has, is if you're arguing specific jurisdiction, do you have anything other than the fact that they contracted the Virgin Islands vessel? Yes, Your Honor. Arguing specific jurisdiction, this Court has held, you know, the Supreme Court test in O'Connor, for instance. Here, the defendant's good purpose to direct their activity at the Virgin Islands. Not only do they negotiate this contract with the Metcalf, they have this ongoing relationship with the business. He and she have even on their website, purchasers and renters of their vessels to this business located in O'Connor. Additionally, the litigation in this case, which is going to specific jurisdiction required, does arrive out of and relate to rent-a-sponsor activity. Specifically, if we apply the but-for approach, I know this Court only used it as a starting point for the arriving out of and relating to process or analysis. But for Renaissance's selling multiple vessels to CMC, but for Renaissance advertising on its website, there's vessels to say, hey, if you're interested, that, you know, this place has vessels for potential renters and purchasers to claim. The Metcalfs became familiar with Renaissance's vessels by renting them from CMC located here in O'Connor. Is your argument in part that it's more than just contracting with the Virgin Islands residents because Renaissance knew that the boat, understood that the boat, was going to be docked, used, whatever you do with boats in the Virgin Islands, that that was, it was a contract for a good, and I guess in some sense, services, but that the good was going to be shipped to and used in the Virgin Islands? Is that the whole of your specific jurisdiction argument? Yes, and yes, Your Honor. That and also that because if you look at the totality of the circumstances, well, I guess going to the second jurisdiction, yes, Your Honor, that would be just a whole different argument. But also... If the boat was going to sink, they knew it was going to sink. Exactly. Additionally, Your Honor, because the district court did not hold an evidentiary hearing on the matter of personal jurisdiction, the Metcalfs positively acknowledged the contract by ICK and they only, that's all they needed to do to at least establish the contract by ICK for personal jurisdiction. The Metcalfs affidavits should be accepted as true and any disputed facts should be drawn in favor of the parties of the Virgin, which in this case is the Metcalfs. What discovery do you think you wanted? Your Honor, interrogatories and depositions. It would be helpful to know, for example, if the list of the renaissances, the list of all the purchases and expresses, if so, how many of those actually are in the Virgin Islands? We have word that William Ratley comes down on a regular basis to talk to the owners and representatives of CMT to sell the new vessels. Is that true? Does CMT, in fact, have a special pricing range of the Renaissance because it purchases so many other vessels? Any other possible relationships and contacts that Renaissance has with the Virgin Islands? And this is what I'd like to have done through interrogatories and the depositions of its agents, especially William Ratley, the president of CMT. Isn't there a special rule that makes recognition of the fact that this is somebody who has plenty to have absolutely no contact with? Ordinarily, the right to discovery is, of course, yours if you're acquitted. But don't you have to make some tender of what you believe to be the facts that would show that the person is your acquitted? And then ask for discovery to enable you to prove that the person is your acquitted. Is that kind of law? Yes, Your Honor, that is correct. The Metcalfe Supplies is a big, big tender, but there were facts that would enable personal jurisdiction to be your acquitted. Additionally, the Metcalfe also asked that discovery be allowed in your acquittal, Your Honor. And the court obviously did not buy the Metcalfe's argument regarding personal jurisdiction, nor was their discovery allowed as to a personal jurisdiction. Thank you, Ms. McRae. We'll have you back. Thank you. Thank you. Thank you, Your Honor. Your Honor, it's Alan Pierson appearing on behalf of the Metaconstituency and the defendant's affiliate. May it please the court. Judge, I'm here half the time. I've been a member of the EI Fire and Rescue Team. I'm avoiding the cold weather up here. Thank you very much, Your Honor. Your Honor, this is an action to cement that Appleby looks at as being essentially a $16,000 claim. It involves the sale, purchase of the vessel, the purchase price of which was $84,000. And they did ask for rescission in the contract as well. They're also asking for additional damages.  The plaintiff, the Metcalfe's Virgin Islands resident, went to Florida by their own admission, having seen a Prowler Vessel manufactured by Renaton at a rental facility in St. Towns and negotiated for the purchase of this vessel with Renasant. Negotiations with Renasant took place in Florida. The contract that was issued in Florida, the contract signed in Florida, the money paid to Renasant by the Metcalfe in Florida, the boat manufactured in Florida, the manufacturer, Renasant, maintained all of its operations in Florida, manufacturing, sourcing the parts, advertising, sales, merchandising, all operations, sales force, sales reps, maintained absolutely no business whatsoever in the U.S. Virgin Islands. Well, that's a matter of dispute, right? I mean, at the point at which the court is making a judgment on personal jurisdiction, if a party tenders information and an allegation of ongoing business relations in the jurisdiction, doesn't the court have to sort of take that into account in the light most favorable to the person's jurisdiction? Your Honor, I agree with that when you're looking at the data, but I think under the circumstances when the defendant indicates that in order to establish personal jurisdiction, that they admit that the negotiations were, number one, remote from St. John, that the entering into the agreement with the manufacturer was from St. John, they admit that they went to St. John, that they paid additional money for drink-wrapping. I've no doubt that there are things that you have to argue or did argue with the Supreme Court in the past about why the weight of any of these transactions is not in the Virgin Islands. But what I'm trying to get you to address is the assertion made by your opponent that there are ongoing business relationships between your client and others in the Virgin Islands sufficient to constitute general jurisdiction if the court, the district court here, had only allowed them to explore that a little further, and in any event, there was enough even without further exploration for him to be willing to accept Mr. Metcalf's allegation. So regardless of how much weight with respect to this transaction might be in Florida as opposed to here, please speak to the issue raised by your opponent that there is general jurisdiction based on other contexts. Admittedly, since we purchased a number of units from the TS who runs that operation, we purchased those units in the state of Florida, Miami, Philadelphia, the Rapids, Convocation, and the parks and that type of thing. However, since we are responsible for the drone repairs, of course, the parks and the care of everything in the Virgin Islands, are these issues a fact? Admittedly, yes, they are issues of fact. Should the district court, in light of conflicting factual statements between the parties that ordered an evidentiary hearing, it is never a request for an evidentiary hearing by the plaintiff in this case to the district court. And I think what the district court did was it looked at the brutality of the circumstances and saw that this was essentially a small claims court case dressed up as a federal jurisdiction case. It also, I believe, reserved and didn't look at the actual agreements which are a part of the record. And if the court takes a look at those agreements, it will see, number one, there is a disclaimer of warranty on the back of the agreement that was entered between the parties. The disclaimer of warranty then refers to the tender home warranty. Well, you're taking us into merit, right? We're just trying to find out whether the judge here should allow the case to be investigated. Your Honor, I think I addressed these issues with all due respect. There were conflicting allegations. There were conflicting facts. There was never a request for an evidentiary hearing. And I don't believe that the court felt that there was merit with respect to the conflicting allegations made by the Metcalfe. It was warranted the necessity of having an evidentiary hearing. As a matter of law, if there were conflicting facts, the judge was obligated to take the Metcalfe's side of it for purposes of jurisdiction. I don't believe so, Your Honor. I do not believe so. I do not believe so, particularly in light of the specific form they faced jurisdictionally. It has to be articulated in a panel. I believe that the court had enough evidence to establish that the plaintiff could not comply with the jurisdiction requirements set forth in the panel specifically. Your Honor, I believe that clearly the court had to consider the actions of the plaintiff in favor of the plaintiff. In the entirety, I agree with that. Clearly. Judge, I would agree with that. I would agree with that. However, I think that the court looked at the affidavit, saw that some of the points did not conflict with it, looked at what the plaintiff said. The decision of Judge Gomez is extremely thorough. I consider the decision to be beyond what I ordinarily would expect from a judicial court on a single issue of motion. He went through every possible point that he could find wrong on jurisdiction. He established that the Virgin Islands statute did not apply to constitutional issues of due process requirements and established that the plaintiff had failed to address issues that were addressed specifically by the defendant in their affidavit and said, you didn't address this issue. It's not a conflict. Therefore, I have the right, not the right, the obligation to take as to the affidavit, Mr. Radliff in connection with his allegations on this jurisdiction. I heard you there. You told us that the plaintiff's affidavit did not conflict with the Virgin Islands. I didn't think that was a mistake. Mr. Price. The glitching issue, I believe, involves the shifting of the law. The plaintiff's affidavit, number two, and the malice of the judge's affidavit, there is simply not enough direction to go to the back of the court and stop. And I think that, for everything, even if you do accept that it's not in the court of requirement, that most of the facts that you provide are in the court of requirement, and you're trying to prove that those facts are in the court of requirement, you're trying to prove that those facts are in the court of requirement. It's not enough because it doesn't show the deliberate targeting of this jurisdiction,  and Judge Gomez has every right to say, even if there's a conflict with respect to that plaintiff's affidavit, the court can take judicial notice that the Virgin Islands is a trans-shipping point for the entire Lesser Antilles just because the vessel is coming to the Virgin Islands. It doesn't mean that it's not going to Trinidad. I would agree with you there. Judge Gomez said, The Metcalfe made under one assertion to establish that Section A-1 of the Wal-Mart statute was a breach of common law, when it sought to transact with business in the Virgin Islands. Section A-1 says, Transacting with any business in this area is a breach of common law. I think that the use of the Metcalfe Also, a question that I have is, that they exchange phone calls, faxes, and e-mails on the Virgin Islands, and that is up to seven votes. The Virgin Islands resident, for 60 years, they've sold more than four votes. Four votes to Virgin Islands, a higher-profile metal company, and they advertise on the website that folks could be rented from the company's website at the same time. In addition to the sale of the Metcalfe, now, it seems to me that this breach, that Judge Gomez fails to give plaintiffs feedback that there's additional allegations of what might have been a wrong call. You're talking about the A-1 product, yes? Of the Wal-Mart. Of the Wal-Mart, yes. I would address the issue. I understand. But I thought at first you said that there was no likewise not the Metcalfe. I didn't say that. Do you think they did? I do not believe that they did. I decided a number of reasons what I would say would be the weaker issue of the Metcalfe. And I think at least that that's what we're going to draw. Your Honor, I think that if you take a look at the Metcalfe affidavit, they do include some additional facts with respect to activities being done by Renaissance and Georgetown. However, I think that Judge Gomez addresses that issue by indicating that even the courtesy contracts of Georgian Island residents have been formed with the Home Department in Georgian Island. It's still not enough for the single act of this nature doesn't qualify. And I guess if you see it that way, the question about whether this is what may have or could have been I understand, Your Honor, but you're going to have to take you're going to have to take the plaintiff's bail by supporting some other private property. I think the decision was made by a representative of the Home Department and it came to the House in front of the Senate. Your Honor, I think that the court in addressing the minimum contract issue was very specific in defining it. As I mentioned before, I was astonished that the court got so heavily involved in that. And the court addressed the pre-fraud test and indicated that the plaintiff did not come forward with enough evidence and specifically said that the deliberate targeting of Georgian Island was not shown. And therefore, you cannot say that the conduct of non-residents was appropriate. Going even further, the court decided, Sunbelt specifically said that non-residents, contractors, or foreign residents without more insubstantial going to C&C addresses the special pricing issue. Your Honor, I think practically speaking, when we're looking at a case like this, the manufacturer in Florida never expects the sale of $184,000 boat with no personal interest is going to turn into a federal case when on his own pre-printed form, the contract that specifically includes a form, a selection clause, and a venue clause that is forcible certainly doesn't expect to be called in for the Georgian Islands and doesn't. I've also been practically speaking, if you look at the man, those two issues are the same. What's going to happen if we have an affidavit on that issue? The court's going to revive it. In my mind, revive those two issues and say, hey, I've addressed them before, but I'm addressing them now. And that's certainly something that could happen, but that doesn't speak to personal jurisdiction. Well, no, but it speaks to the ability of Congress. And I didn't read that issue out in my business, but I'm fully aware of the impact of that action before. Why would a man that went with the feudal party ever do that? Thank you. Thank you very much. Thank you. Thank you, sir. Thank you. Thank you. May it please the court. First and foremost, this case should not be decided on incorrect by Renaissance Plaza that the amount of damages that the Metcalfs are seeking is $16,000. This is simply incorrect as Judge Jordan pointed out that there's a factual excuse in the Metcalfs' RCP decision. Also, the Metcalfs never went to Florida. According to the affidavits of both the original and supplemental affidavits with the Metcalfs, the Metcalfs never went to Florida to conduct the sale of this vessel. They never went to purchase. They did not purchase the vessel in Florida. They did not sign any contracts in Florida or anything. And again, all factual discrepancies in the affidavits should be drawn in favor of the Metcalfs or in favor of the party that has the burden. And the Metcalfs affidavits should be accepted as true. Also, again, there are conflicting facts about the shipping and the crew grabbing and the ultimate Renaissance technology, the ultimate destination of the vessel. Again, the Metcalfs have it. All of these facts have to be looked at in favor of the Metcalfs. It's just another indication of another, as you know, another check mark on the list to say Renaissance New Year vessel is coming to the Virgin Islands. They even pre-grabbed it so it could be shipped    and they took the property property and they took the property property and they took the property property and they took the property property so it could be shipped safely to the Virgin Islands. For the Portland reasons, the Metcalfs, in respect to the former man, became, the district court reversed his report order and the man was reported for alternatively, the man is to be expected to be considered in hope February 6th, 2008. Status on the filing is that discovery of the new Virgin Islands. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.